UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CARLA SOLIS, individually and on
behalf of others similarly situated,

    *Plaintiff*,

v.

PLANET FITNESS, INC.,
a Delaware Corporation d/b/a
PLANET FITNESS and
PLANET FITNESS EQUIPMENT,
LLC, a New Hampshire Limited
Liability Company,

    *Defendants*.
_____/

CLASS ACTION

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE
## FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)

1. This action arises from Defendants' violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as amended (the "FCRA"), which requires Defendants to truncate certain credit card information on receipts. Despite the clear language of the statute, Defendants willfully or knowingly chose not to comply. As such, Plaintiff and certain other consumers who conducted business with Defendants during the time frame relevant to this complaint, each of whom paid for goods using a credit or debit card and were provided with a violative receipt, suffered violations of § 1681c(g).

2. As a result of Defendants' reckless conduct, Plaintiff and the Class are entitled to an award of statutory damages and other relief as further detailed herein.

### JURISDICTION AND VENUE

3. This Court has jurisdiction under 15 U.S.C. § 1681p, and 28 U.S.C. §§ 1331 and 1337 because the claims in this action arise under violation of a federal statute.

4. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Defendants conduct business in this district and its contacts here are sufficient to subject it to personal jurisdiction.

## PARTIES

5. Plaintiff Carla Solis ("Plaintiff") is a natural person, who resides in Broward County, Florida.

6. Defendant, Planet Fitness, Inc. ("Defendant" or "Planet"), is a Delaware corporation, which does business under the brand name, PLANET FITNESS. Defendant's principal address is Corporation Trust Center 1209 Orange St., Wilmington, Delaware 19801.

7. Defendant Planet Fitness Equipment, LLC ("Defendant" or "Planet Fitness Equipment") is a New Hampshire limited liability company. Defendant's principal address is 26 Fox Run Road, Newington, New Hampshire 03801, and whose registered agent for service of process in the state of Florida is CT Corporation System, 1200 Pine Island Road, Plantation, FL 33324.

8. Planet Fitness, Inc. and Planet Fitness Equipment, LLC (collectively "Defendants" or "Planet Fitness") are "one of the largest and fastest-growing franchisors and operators of fitness centers in the United States by number of members and locations" with more than 8.9 million members and 1,300 total locations worldwide.[1]

9. Defendants have conducted $1.9 Billion in system wide sales and claim that over seventy-five (75) percent of their membership fees are collected via an electronic form of

---

[1] Planet Fitness, Inc., Form 10-K, Dec. 31, 2016, p. 3, available online at http://d18rn0p25nwr6d.cloudfront.net/CIK-0001637207/0cd7deac-5c9c-43a3-9e19-849d3a2a53ba.pdf (Last accessed June 22, 2017); See also http://www.planetfitness.com/franchising (Last Accessed June 22, 2017).

payment.

10. Defendants derive a royalty fee of 5% of gross sales from each Planet Fitness location.[2]

11. In 2016, Planet Fitness earned annual revenues of more than $378 million.[3]

12. Defendants exercise control over its Planet Fitness Corporate Locations and Planet Fitness Franchisees, including but not limited to, requiring franchisees to use a certain type of point of sale ("POS") system.

13. Upon information and belief, Defendants' point of sale system enables the communication of all sales information in real-time to centralized servers in a managed data center.

14. Upon information and belief, Defendants require each of their franchisees to pay a fee of approximately $1,200 to Defendants to maintain compliance practices, including those protecting consumer privacy and customer data.

15. Those customers who make purchases from one of Defendants' fitness centers with a credit or debit card do so with the expectation that Defendants will secure their data, protect their personal information, and comply with federal privacy laws.

16. Defendants represented to Plaintiff and the putative class that they would protect their sensitive information.

17. Through its website, Defendants state the following privacy policy.

**SECURITY:**

Security for all personal information is extremely important to us. We store your personal information securely and use encryption and/or other special procedures designed to protect the information

---

[2] *Id.*
[3] *Id.*

>we collect from loss, misuse, or unauthorized access or disclosure, alteration or destruction.[4]

18. Plaintiff and the putative class conferred a monetary benefit on Defendants in the form of money paid in exchange for goods and/or services provided by Defendants.

19. Upon information and belief, Defendants appreciate or have knowledge of these benefits, that Defendants pay for the administrative costs of data management and security, to ensure compliance with federal, state, and local laws, and codes or regulations; and that Defendants should not be permitted to retain the money belonging to Plaintiff and the putative class because Defendants failed to implement the data management and security measures that are mandated by industry standards, as well as the proper federal, state, and local laws, and codes or regulations.

20. For example, through its website, Defendants state the following notice of compliance with California law in their privacy policy.

**NOTICE TO CALIFORNIA RESIDENTS**:

>California Civil Code § 1798.83 permits residents of California to request from Planet Fitness a notice disclosing: (1) the categories of personal information we have shared with third parties, if any, for the third parties' direct marketing purposes, during the preceding calendar year, and (2) the names and addresses of those parties.[5]

21. As a result of Defendants' failure to implement and follow adequate security procedures, the sensitive information of Plaintiff and putative Class Members whom Defendants routinely kept confidential in exchange consideration paid for goods or services provided for by Defendants now face a substantial and imminent risk of the fraudulent use of that information.

---

[4] http://www.planetfitness.com/online-privacy-policy (Last Accessed: June 26, 2017)
[5] *Id.*

## FACTUAL ALLEGATIONS

### Background of FACTA

22. Identity theft is a serious issue affecting both consumers and businesses. The Federal Trade Commission, received over 490,000 consumer complaints about identity theft, representing a 47 percent increase over the prior year.

23. Congress enacted FACTA to prevent actual harm. See Pub. L. No. 108-159 (December 4, 2003) ("An Act . . . to prevent identity theft . . . and for other purposes.")

24. "[I]dentity theft is a serious problem, and FACTA is a serious congressional effort to combat it…the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information." *Redman v. Radioshack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014).

25. Upon signing FACTA into law, President Bush also remarked that "Slips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush added that the government, through FACTA, was "act[ing] to protect individual privacy." [6]

26. One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point of sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

27. Codified at 15 U.S.C. § 1681c(g), this provision states the following:

> ***Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.***

---

[6] *Id*.

(the "Receipt Provision").

28. By shirking the requirements of a federal privacy statute by not complying with the Receipt Provision, Defendants have caused consumers actual harm, not only because consumers were uniformly burdened with an elevated risk of identity theft, but because a portion of the sale from credit or debit card transaction is intended to protect consumer data, including the masking of credit card or debit card expiration dates as required by both state and federal laws.

29. Defendants also invaded Plaintiff's privacy by disclosing Plaintiff's private information to those of Defendants' employees who handled the receipts, as well as other persons who might find the receipts in the trash or elsewhere.

## FACTA WAS WIDELY PUBLICIZED

30. After enactment, FACTA provided three years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

31. The requirement was widely publicized among retailers and the FTC. For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, then-CEO of Visa USA, Carl Pascarella, explained that, "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . . ."[7] Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

---

[7] Source: http://www.prnewswire.com/news-releases/visa-usa-announces-account-truncationinitiative-to-protect-consumers-from-id-theft-74591737.html (last accessed: June 20, 2017)

32. Card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all."[8]

33. Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress passed The Credit and Debit Card Receipt Clarification Act of 2007 in order to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act.[9]

34. Importantly, the Clarification Act did not amend FACTA to allow publication of the expiration date of the card number. Instead, it simply provided amnesty for certain past violators up to June 3, 2008.

35. In the interim, Card processing companies continued to alert their merchant clients, including Defendant, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.)

---

[8] Source: http://www.runtogold.com/images/rules_for_visa_merchants.pdf (last accessed: June 20, 2017).
[9] Source: https://www.govtrack.us/congress/bills/110/hr4008/text (last accessed: June 20, 2017).

> To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

See Visa Alert attached hereto as Exhibit A.

36. According to data from the Federal Trade Commission's 2014 Consumer Sentinel Network report, the Miami-Fort Lauderdale-West Palm Beach ranks number one for identity theft-related consumer complaints, with 316.2 complaints per 100,000 people. That's 50% percent more than Seattle-Tacoma-Bellevue, which ranks a distant second. Also, six of the top twelve metropolitan areas for identity theft are in Florida, according to the report.[10]

37. So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined to set-up a free website (<http://www.annualcreditreport.com>) in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

### *Defendants' Prior Knowledge of FACTA*

38. Most of Defendants' business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendants could have readily done the same.

39. Not only were Defendants informed it could not print the expiration date of credit or debit cards, it was contractually prohibited from doing so. Defendants accept credit cards and

---

[10] Source: https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-databook-january-december-2014/sentinel-cy2014-1.pdf (last accessed: June 20, 2017)

debit cards from all major issuers; these companies set forth requirements that merchants, including Defendants, must follow, including FACTA's redaction and truncation requirements.

40. As noted above, the processing companies have required that credit card or debit card expiration dates not be shown since 2003 and still require it. For example, American Express required:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

*See* Exhibit B, attached hereto.

41. Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.

*See* Exhibit C, attached hereto.

42. Additionally, Dorvin Lively, current President and Chief Financial Officer of Planet Fitness, had direct knowledge of FACTA's requirements. In fact, Mr. Lively was the Chief Financial Officer and Chief Administrative Officer of Radio Shack Corporation from 2011-2013, when Radio Shack was sued for violating FACTA.[11]

43. It is well settled law that the knowledge of a corporation's directors may be imputed to the corporation. *Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998); In re Hellenic Inc., 252 F.3d 391, 395 (5th Cir. 2001) (noting that "courts generally agree that the

---

[11] *See Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); Radio Shack Corporation, Quarterly Report (Form 10-Q) (2012).

knowledge of directors or key officers, such as the president and vice president, is imputed to the corporation").

## Plaintiff's Factual Allegations

44. On or about March 19, 2017, Plaintiff purchased certain goods; specifically, a gym essentials bundle kit,[12] from one of Defendants' fitness center locations in Fort Lauderdale (Broward County), Florida.

45. Plaintiff paid for the subject goods using her personal American Express® credit card at which time she was presented with an electronically printed receipt bearing the full expiration date, along with the last four digits of her card number.

46. All purchases made with a credit or debit card cause to be printed a receipt which also electronically captures and records the fitness center location, transaction date and time, and name of the cashier.

## Defendants' Misdeeds

47. At all times relevant herein, Defendants were acting by and though their agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant.

48. At all times relevant herein, the conduct of Defendants, as well as that of their agents, servants and/or employees, was in willful and reckless disregard for federal law and the rights of the Plaintiff.

49. It is Defendants' policy and procedure to issue an electronically printed receipt to individuals at the point of sale – *i.e.*, immediately upon receipt of credit card payment.

50. Upon information and belief, Defendants require each of their franchisees to

---

[12] http://www.pfstore.com/Product/Planet-Fitness-Essentials-Bundle---Black-PFESBV2P-Black-162143.htm (Last Accessed: June 26, 2017).

either purchase or lease their proprietary branded Visionary ™ point of sale software and hardware from Retail Control Systems ("RCS"), or another system approved by Defendants.

51. Upon information and belief, Defendants require each of their franchisees to purchase and utilize Radiant Systems ("Radiant") point of sale hardware purchased from RCS for use in conjunction with the Visionary ™ software.

52. Upon information and belief, Defendants require each of their franchisees to agree, to upgrade all cash registers and/or POS systems, computer hardware and software, as necessary, in order to bring the each business into compliance with any changes to Defendants' methods of operation.

53. Upon information and belief, the violations at issue arose when Defendants required all its franchisees to utilize and upgrade their Visionary ™ point of sale systems, or other authorized systems.

54. Upon information and belief, prior to the nationwide rollout of the new Visionary™ point of sale system software, Defendants had a written policy in place requiring the truncation of credit card account numbers and masking of expiration dates; this is evidenced by the fact that prior to the installation of the aforementioned retail system, Defendants were actually truncating credit card account numbers and expiration dates.

55. Upon information and belief, it would take an individual less than thirty seconds to run a test receipt in order to determine whether the Radiant point-of-sale system was in compliance with federal law(s) or Defendants' own alleged written policy requiring the masking of expiration dates.

56. Upon information and belief, as explained in the Radiant manuals, the digits appearing on the receipt are not printed accidentally; the equipment and software used to print

the receipts and electronically store an image of same must be programmed to display certain information, and likewise, programmed not to display certain information.

57.     Notwithstanding the fact that it has extensive knowledge of the requirements of FACTA and the dangers imposed upon consumers through its failure to comply, Defendants continue to issue point of sale receipts, which contain the full expiration date of the credit card or debit card, in direct violation of the Receipt Provision of the FCRA.

58.     Notwithstanding the Receipt Provision, Defendants continue to deliberately, willfully, intentionally, and/or recklessly violate FACTA by issuing receipts which do not comply with the FCRA.

59.     Notwithstanding the fact that Defendants had years to comply with FACTA's requirements, Defendants continue to act in conscious disregard for the rights of others. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. Sept. 19, 2014) (explaining that issue of willfulness in FACTA class action lawsuit was "straightforward" wherein defendant violated a parallel state statute years earlier).

60.     To paraphrase the words of Judge Posner in *Redman v. RadioShack Corp.*, Defendant has been engaged "in conduct that creates an unjustifiably high risk of harm that is either known or so obvious that it should be known…" *Id.* at *2.

61.     A company subject to the FCRA can be liable for willful violations of the FCRA within the meaning of §1681n if they show a "reckless disregard" for the law. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

## **CLASS ACTION ALLEGATIONS**

62.     This action is also brought as a Class Action under Fed. R. Civ. P. 23. Plaintiff proposes the following class, defined as follows, subject to modification by the Court as

required:

> **(i) All persons in the United States (ii) who, when making payment at one of Defendants' fitness locations across the country (iii) made such a payment using a credit or debit card that (iv) were provided a point of sale receipt (v) which displayed the expiration date of said credit or debit card (vi) within the two (2) years prior to the filing of the complaint through the date of the order on certification.**

63. Plaintiff falls within the class definition and is a member of the class. Excluded from the class are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

64. Plaintiff respectfully reserves the right to amend the putative class definition prior to the conclusion of this matter, subject to Court approval. Class definitions may be amended or altered at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C); *see also*, *e.g.*, *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 695 (S.D. Fla. 2013) (modifying class definition per plaintiff's suggestion).

### Certification Under Either Rule 23(b)(2) or (b)(3) is Proper.

65. The members of the class are capable of being described without managerial or administrative problems. The members of the class are readily ascertainable from the information and records in the possession, custody or control of Defendants.

66. Defendants operate approximately 1,300 fitness centers throughout the United States, accept credit cards and debit cards at each and, upon information and belief, prints receipts reflective of credit card or debit card transactions. Therefore, it is reasonable to conclude that the class is sufficiently numerous such that individual joinder of all members is impractical. The disposition of the claims in a class action will provide substantial benefit to the parties and

the Court in avoiding a multiplicity of identical suits. The Class can be identified through Defendants' records, or Defendants' agents' records.

67. There are common questions of law and fact that predominate over any questions affecting only the individual members of the class. The wrongs alleged against Defendants are statutory in nature and common to each and every member of the putative class.

68. While all Class members have experienced actual harm as previously explained herein, this suit seeks only statutory damages and injunctive relief on behalf of the class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

69. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the class predominate over questions that may affect individual class members, including the following:

a. Whether, within the two years prior to the filing of this Complaint, Defendants and/or their agents accepted payment by credit or debit card from any consumer and subsequently gave that consumer a printed receipt upon which contained the full expiration date;

b. Whether Defendants' conduct was willful and reckless;

c. Whether Defendants are liable for damages, and the extent of statutory damages for each such violation; and

d. Whether Defendants should be enjoined from engaging in such conduct in the future.

70. As a person that patronized one of Defendants' fitness centers and received a

printed receipt containing the full expiration date of her credit card, Plaintiff is asserting claims that are typical of the proposed class. Plaintiff will fairly and adequately represent and protect the interests of the class in that Plaintiff has no interests antagonistic to any member of the class.

71. The principal question is whether the Defendants violated section 1681c(g) of the FCRA by providing class members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether Defendants willfully or knowingly provided such electronically printed receipts, despite firsthand knowledge of the unlawful nature of such policy.

72. Plaintiff and the members of the class have all suffered harm as a result of the Defendants' unlawful and wrongful conduct. Absent a class action, the class, along with countless future patrons of Defendants' many retail establishments, will continue to face the potential for irreparable harm. In addition, these violations of law would be allowed to proceed without remedy and Defendants will (as they have already shown) continue such illegal conduct. Because of the size of the individual class members' claims, few class members could afford to seek legal redress for the wrongs complained of herein.

73. Defendants' defenses are and will be typical of and the same or identical for each of the members of the class and will be based on the same legal and factual theories. There are no unique defenses to any of the class members' claims.

74. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with federal law. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small. The maximum statutory damages in an individual action for a violation of this statute are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

75. Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## **COUNT I – VIOLATIONS OF 15 U.S.C. § 1681(c)(g)**

76. 15 U.S.C. §1681c(g) states as follows: Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

77. This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. §1681c(g)(3).

78. Defendants employ the use of said devices for point of sale transactions at the various locations of Defendants.

79. On or before the date on which this complaint was filed, Plaintiff and members of the class were provided receipt(s) by Defendants that failed to comply with the Receipt Provision.

80. At all times relevant to this action, Defendants were aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

81. Notwithstanding the three year period to prepare for FACTA and its accompanying provisions, including but not limited to the Receipt Provision; and having knowledge of the Receipt Provision and FACTA as a whole; Defendants knowingly, willfully, intentionally, and/or recklessly violated and continue to violate the FCRA and the Receipt Provision.

82. By printing the expiration date of Plaintiff's credit card number on Plaintiff's

transaction receipt, Defendants caused Plaintiff to suffer a heightened risk of identity theft; exposed Plaintiff's private information to those of Defendants' employees who handled the receipt and forced Plaintiff to take action to secure or destroy the receipts.

83. As a result of Defendants' willful violations of the FCRA, Plaintiff and members of the class continue to be exposed to an elevated risk of identity theft. Defendants are liable to Plaintiff and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

**WHEREFORE**, Plaintiff Carla Solis respectfully requests that this Court enter judgment in their favor and the class, and against Defendants for:

a. An Order granting certification of the Class;

b. Statutory damages;

c. Punitive damages;

d. Injunctive relief;

e. Attorneys' fees, litigation expenses and costs of suit; and

f. Such other and further relief as the Court deems proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts.

Dated: July 5, 2017.                             Respectfully submitted,

*/s/ Seth M. Lehrman*
Steven R. Jaffe
Fla. Bar No. 390770
E-mail: steve@pathtojustice.com
Seth M. Lehrman
Fla. Bar No. 132896
E-mail: seth@pathtojustice.com
FARMER, JAFFE, WEISSING,
EDWARDS FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2

Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile: 954-524-2822

Scott D. Owens
Florida Bar No. 0597651
E-mail: scott@scottdowens.com
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Suite 235
Hollywood, FL 33019
Telephone: 954-589-0588
Facsimile: 954-337-0666

*Attorneys for Plaintiff*